United States District Court
Southern District of Texas
**ENTERED**
August 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIELA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-02565 |
| | § | |
| AMED HOSPICE, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Motion to Dismiss (Doc. #14), Defendant's Motion for Summary Judgment (Doc. #15), Plaintiff's Combined Response (Doc. #16), and Defendant's Combined Reply (Doc. #17). Having reviewed the parties' arguments and applicable legal authority, the Court grants in part and denies in part Defendant's Motions.

### I.   Background

Mariela Garcia ("Plaintiff") brings this employment discrimination case against her ex-employer A*Med Hospice ("Defendant"), alleging violations of the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA").[1] Doc. #1 ¶¶ 24–27. Defendant hired Plaintiff as a Certified Nursing Assistant in June 2010. Doc. #15, Ex. A-2 at 7. On September 7, 2018, Plaintiff was in a work-related car accident that resulted in injuries (the "2018 Injury") that qualified Plaintiff for workers' compensation. *Id.*, Ex. E at 2 and Ex. F at 2. As such, Defendant accommodated Plaintiff with light-duty work assignments starting in October 2018. Doc. #1 ¶ 12 and Doc. #7 ¶ 12. On January 31 or February 1 of 2019, Plaintiff was injured

---

[1] Plaintiff's Complaint also mentions violations of Title VII of the Civil Rights Act ("Title VII"). Doc. #1 ¶¶ 3, 6, 24. However, in response to Defendant's Motion to Dismiss, Plaintiff stated that she does not assert any "Title VII retaliation, hostile work environment, and failure to accommodate claims." Doc. #16 ¶ 9. As such, all Title VII claims are hereby DISMISSED.

a second time when she was caught in a shutting door at work (the "2019 Injury"). Doc. #15, Ex. K at 2. On February 1, Plaintiff reported the 2019 Injury to Defendant, who sent her to get a medical exam. *Id.* ¶ 12, Ex. I at 4.

Plaintiff saw two doctors on February 1, 2019. Dr. John Dang first examined Plaintiff and released her back to regular duty work without restrictions, concluding she had no permanent impairment. *Id.*, Ex. H at 2. However, Plaintiff also saw Dr. Jason Gukhool, who diagnosed her with a cervical sprain and prepared a Workers' Compensation Work Status Report (the "February 1 Status Report") that prevented Plaintiff from working until a follow-up appointment in six days. *Id.*, Ex. K at 2. During the February 7, 2019 follow-up, Dr. Gukhool prepared a second Workers' Compensation Work Status Report (the "February 7 Status Report") authorizing Plaintiff to return to work with the following restrictions: no pushing, pulling, climbing stairs or ladders, lifting, carrying, driving, or working at heights. *Id.*, Ex. L at 2. When Plaintiff reported as much to Defendant on February 7, Defendant claimed that Plaintiff "falsif[ied] the reason for her injury on [her] Texas Workers' Compensation Work Status Reports" and terminated her. *Id.* ¶ 13.

On April 13, 2019, Plaintiff filed a Charge of Discrimination (the "EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination, harassment, and retaliation based on disability. Doc. #14, Ex. A at 2. The EEOC issued a right to sue letter four days later. *Id.*, Ex. B at 2. Plaintiff then filed this suit, claiming that Defendant unlawfully terminated her because it was not willing to accommodate her disability stemming from the 2019 Injury, including restrictions regarding regular duty work.[2] Doc. #15, Ex. M at 6–7. Specifically,

---

[2] Plaintiff's claims based on the Status Reports also proceeded before an administrative law judge who determined that Plaintiff's 2019 Injury was not compensable because Plaintiff "could not differentiate her present pain from her previous pain" caused by the 2018 Injury. Doc. #14, Ex. C at 2–3.

Plaintiff's Complaint ("Complaint") asserts claims for discrimination, retaliation, hostile work environment, and failure to accommodate, in violation of the ADA and TCHRA.[3] Doc. #1 ¶¶ 25–29. Defendant now moves to dismiss for failure to exhaust Plaintiff's claims for retaliation, hostile work environment, and failure to accommodate, in addition to any claims arising out of the 2018 Injury.[4] Doc. #14 ¶ 1. Defendant also moves for summary judgment on all claims, arguing that Plaintiff has failed to establish a *prima facie* case or show that Defendant's non-discriminatory reason for termination is pretextual. Doc. #15 ¶ 1.

**II.    Legal Standard**

    **a. Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "allege facts sufficient to state a claim for relief that is plausible on its face" but need not contain "detailed factual allegations." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

---

[3] Though the Complaint mentions diabetes as a basis for disability-based discrimination, Plaintiff's Response only argues that her diabetes claim is exhausted. Doc. #1 ¶¶ 16–17 and Doc. #16 ¶¶ 18, 23–43. Because Plaintiff has offered no evidence or argument regarding discrimination based on this alleged disability, Defendant's Motion for Summary Judgment is granted on all diabetes-related claims. *See Rogers* 755 F.3d at 350.

[4] Defendant brings its Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Doc. #14 ¶ 7. However, a "plaintiff's failure to exhaust her administrative remedies is not a jurisdictional bar but rather a prudential prerequisite to suit." *Davis v. Fort Bend Cty.*, 893 F.3d 300, 305 (5th Cir. 2018). As such, the Court will consider Defendant's exhaustion argument under Rule 12(b)(6).

### b. Summary Judgment

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). A district court "may accept as undisputed the movant's version of the facts and grant [the] motion . . . when the movant has made a *prima facie* showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013) (citation omitted). Additionally, "even where the underlying facts are undisputed, . . . the court must indulge every [r]easonable inference from those facts in favor of the party opposing the motion." *Am. Tel. & Tel. Co. v. Delta Commc'ns Corp.*, 590 F.2d 100, 101–02 (5th Cir. 1979). However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014).

## III. Analysis

### a. Exhaustion of Administrative Remedies

Defendant first argues that Plaintiff's retaliation, hostile work environment, and failure to accommodate claims as well as claims related to the 2018 Injury must be dismissed because Plaintiff failed to administratively exhaust said claims with the EEOC. Doc. #14 ¶ 1. An employee must exhaust administrative remedies before bringing an employment discrimination claim in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "[B]ecause the provisions of Title VII were not designed for the sophisticated, and [] most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (cleaned up). An employee need not "check a certain box[,] recite a specific incantation," or "allege a *prima facie* case." *Id.* at 792. Rather, courts must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.* at 789.

4

A claim "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *cf Stanley v. Univ. of Tex. Med. Branch, Galveston, TX*, 425 F. Supp. 2d 816, 822–23 (S.D. Tex. 2003) (concluding that a "[p]laintiff's failure to articulate *any facts* concerning retaliation that would have put the EEOC on notice about the possibility of such, accompanied by his failure to check the retaliation box" was fatal to his retaliation claim) (emphasis in original)).

Here, Plaintiff checked the box for discrimination based on disability and included the following factual allegations:

> I began my employment with Respondent (A*Med Home Health) on June 1, 2010, in the position of Certified Nurse Aide (CNA). During my employment I was constantly harassed about my job performance by my supervisor, Margie Foster. On February 7, 2019, I was terminated.
>
> I was told I was terminated because I had lied about my worker's [sic]compensation claim, filed due to an on the job injury. I deny Respondent's accusation that I lied about my injury.
>
> I believe that I have been discriminated against because I was regarded as disabled in violation of the Americans with Disabilities Act, as amended.

Doc. #15, Ex. B at 2.

As to Plaintiff's failure to accommodate claim, the EEOC Charge makes no mention of Defendant failing to accommodate Plaintiff's disability or providing an insufficient accommodation. *See id.* Because it is not reasonable to expect a failure to accommodate claim "to grow out of [Plaintiff's] initial charges of discrimination," the Court finds that Plaintiff failed to exhaust her failure to accommodate claim. *See Fine*, 995 F.2d at 578.

Defendant also argues that Plaintiff failed to exhaust her hostile work environment claim. Doc. #14 ¶ 1. In her EEOC Charge, Plaintiff stated that Margie Foster "constantly harassed" her

5

and that she felt "discriminated against because [she] was regarded as disabled." Doc. #15, Ex. B at 2. A claim of hostile work environment is sufficiently "like or related" to a charge of harassment. *Fine*, 995 F.2d at 578. As such, the Court finds that Plaintiff exhausted her hostile work environment claim.

As to Plaintiff's disability discrimination claim, under the ADA, the term "disability" encompasses an actual disability, a record of a disability, and being regarded as having a disability. 42 U.S.C. § 12102(1). The EEOC Charge states that Plaintiff was "discriminated against because [she] was regarded as disabled" and the box for disability is checked. Doc # 14, Ex. A at 2. Taken together, this charge "can reasonably be expected to trigger" an EEOC investigation into disability-based discrimination.[5] *See Pacheco*, 448 F.3d at 792. As such, Plaintiff exhausted her disability discrimination claim.

Defendant lastly argues that Plaintiff failed to exhaust her retaliation claim. Doc. #14 ¶ 1. An employer who terminates an employee due to the employee's filing of a workers' compensation claim, violates the TCHRA. TEX. LABOR CODE. § 451.001. The EEOC Charge states that Plaintiff "was told [she] was terminated because [she] had lied about [her] workers' compensation claim, filed due to an on the job injury. [She] den[ies] Respondent's accusation that [she] lied about [her] injury." Doc # 14, Ex. A at 2. The Court finds that this allegation could reasonably be expected to

---

[5] Though Defendant argues Plaintiff has failed to exhaust claims related to the 2018 Injury, it has only provided authority that requires discriminatory acts be individually, not each event leading up to said acts. *See* Doc. #14 ¶ 16; *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (holding that a charge asserting one type of claim cannot reasonably be expected to grow into an investigation of another type of claim); *Avina v. JP Morgan Chase Bank*, N.A., No. CIV.A H-08-1885, 2010 WL 3505161, at *6 (S.D. Tex. Sept. 3, 2010), *aff'd*, 413 F. App'x 764 (5th Cir. 2011) (noting that each discriminatory act must be exhausted but making no mention of individual events). Termination, the only discriminatory act asserted in this case, is plainly included in the EEOC charge. *See* Doc. #14, Ex. A at 2. Recognizing that none of Plaintiff's claims are based exclusively on the 2018 Injury such that they would be the basis for a separate cause of action, the Court finds Defendants' arguments regarding exhaustion of the 2018 Injury unpersuasive.

trigger an EEOC investigation into a retaliation claim, thus satisfying the exhaustion requirement. *See Pacheco* 448 F.3d at 792.

Accordingly, the Court grants Defendant's Motion to Dismiss as to Plaintiff's failure to accommodate claim and denies it as to Plaintiff's disability discrimination, hostile work environment, and retaliation claims.

### b. Hostile Work Environment

Defendant next moves for summary judgment on Plaintiff's hostile work environment claim. Doc. #15 ¶ 1. To state a hostile work environment claim due to disability-based harassment, a plaintiff must show that she (1) is a member of a "protected group," (2) endured "unwelcome harassment" that was based on her disability and "affected a term, condition, or privilege of employment," and (3) that her employer "knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). Here, even assuming Plaintiff endured unwelcome harassment due to her disability, she has not proffered any evidence that this harassment affected a term, condition, or privilege of employment, nor that Defendant had or should have had any knowledge of it and failed to take action. *See* Doc #16. Because Plaintiff has failed to show a genuine dispute of material fact for essential elements of her claim, the Court grants summary judgment as to Plaintiff's hostile work environment claim. *See* FED. R. CIV. P. 56(a).

### c. Disability Discrimination

Defendant also moves for summary judgment on Plaintiff's disability discrimination claims under the ADA and TCHRA. Doc. #15 ¶ 1. Both the ADA and TCHRA make it unlawful for an employer to discriminate against an employee based on disability. 42 U.S.C. § 12112(a); TEX. LABOR CODE § 21.051. "Because TCHRA parallels the language of the [ADA], Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cty. Coll.*

7

*Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018) (internal quotations omitted). In cases where there is no direct evidence of discrimination, a plaintiff can prove her case with indirect evidence under the *McDonnell Douglas* burden-shifting framework. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id*.

If a plaintiff shows a *prima facie* case, "a presumption of discrimination arises, and [the defendant] must articulate a legitimate non-discriminatory reason for the adverse employment action." *Cannon*, 813 F.3d at 590. If the defendant meets this standard, the burden then "shifts back to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id*. (citations omitted). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Caldwell*, 850 F.3d at 242 (internal citations omitted). "The combination of suspicious timing with other significant evidence . . . can be sufficient to survive summary judgment." *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243–44 (5th Cir. 2019) (cleaned up). If a genuine issue of material fact exists as to whether defendant's explanation is worthy of credence, "[n]o further evidence of discriminatory animus is required because once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotations omitted).

To establish a *prima facie* case of disability discrimination, Plaintiff "must prove (1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of h[er] disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). The parties do not dispute that Plaintiff was qualified for her job or

8

that termination is an adverse employment decision. *See* Doc. #15 ¶ 29 and Doc. #16 ¶ 28. "Whether a plaintiff is disabled under the ADA is not a demanding question." *Epley v. Gonzalez*, No. 19-10781, 2021 WL 2351155, at *2 (5th Cir. June 8, 2021). The ADA defines disability to include "a record of" "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(B). "[M]ajor life activities include . . . performing manual tasks . . . [and] lifting." *Id.* § 12102(2)(A). A plaintiff can establish a record of disability by showing the defendant was aware of, had access to files about, and provided accommodations for said disability. *Epley*, 2021 WL 2351155, at *3. A nexus must exist between the adverse employment action and the alleged discrimination. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 701 (5th Cir. 2014). "Very close" "timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (noting that six and a half weeks is "very close" while five months is not).

Here, Plaintiff asserts that she had a "record of" disability.[6] Doc # 16 ¶¶ 25, 27; 42 U.S.C. § 12102(1). Because Defendant's stated reason for termination was that Plaintiff "continuously provided false statements" on her Work Status Reports, it is reasonable to infer that Defendant received said reports and thus had a record of Plaintiff's disability. Doc. # 15 ¶ 31, Ex. B at 2; *see Am. Tel.*, 590 F.2d at 102. Defendant contends that Plaintiff no longer had a disability on the day of termination, February 7, 2019, because Dr. Dang found on February 1 that Plaintiff had no

---

[6] Plaintiff also asserts that she was "regarded as" disabled. Doc. #16 ¶ 25. An individual cannot be "regarded as" having a qualifying disability if the individual is only regarded as having "impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102 (3)(B). Plaintiff offers no evidence that any of her injuries were expected to last more than 6 months. *See* Doc. #15, Ex. H at 2, Ex. K at 2, and Ex. L at 2. Therefore, the Court grants summary judgment as to claims based upon Plaintiff being "regarded as" disabled.

9

permanent impairment, no longer required medical care, and could return to work without restrictions. *Id.*, Ex. H at 2. This evidence is directly contradicted by Dr. Gukhool, who found Plaintiff's injuries on February 1 prevented her from returning to work until at least February 7, 2019. *Id.*, Ex. K at 2. When Plaintiff returned for another medical exam on February 7, she was instructed that she could only return to work if she did not climb stairs, lift, carry, push, pull, or drive until February 17, 2019. *Id.*, Ex. L at 2. A complete moratorium on these activities constitutes a substantial limitation. *See Tarrant Cty*, 717 F. App'x at 446. The Court finds that these conflicting medical reports create a genuine issue of material fact as to whether Plaintiff had a record of a disability within the meaning of the ADA.[7]

As to causation, Defendant terminated Plaintiff six days after she filed a workers' compensation work status report excusing her from work for one week and on the same day that she filed a second status report that restricted her work activities. Doc. #15, Ex. A-1 at 5, Ex. K at 2, and Ex. L at 2. There is no question that the temporal proximity between Plaintiff reporting her disability-based restrictions and her termination were "very close." *See Lyons*, 964 F.3d at 305. Furthermore, while Plaintiff was on doctor-ordered light-duty assignments for the 2018 Injury, Defendant "pressure[d] Plaintiff to return to work" at a memory care facility for aggression-prone patients with dementia, schizophrenia, and Alzheimer's, creating a heightened risk of exacerbating Plaintiff's injuries. Doc. # 15, Ex. M at 6–7. The Court finds this evidence sufficient to create a causal connection between Plaintiff's disability-related restrictions and her termination, thus

---

[7] Defendant also argues that Plaintiff is not disabled under the ADA because Dr. Dang certified that she did not have a permanent impairment on February 1, 2019. Doc. # 15 ¶ 24, Ex. H at 2. Under the ADA's actual and "record of" disability prongs, "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." 29 CFR § 1630.2 (j)(1)(ix) (2012); s*ee also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331 (4th Cir. 2014) (finding that the EEOC reasonably determined that the definition of disability includes temporary impairments). Because a short-term injury can satisfy the requirements of an ADA disability, the Court finds Plaintiff's 2018 and 2019 Injuries are sufficient to qualify as a disability under the ADA.

satisfying Plaintiff's burden of stating a *prima facie* case. *Caldwell*, 850 F.3d at 241.

As to its burden of producing a legitimate, non-discriminatory reason for Plaintiff's termination, Defendant asserts that it "fired Plaintiff because she continuously provided false statements on her Workers' Compensation Reports with regard to the date of the alleged injury, how the alleged injury occurred, and that she was unable to return to work." Doc. #15 ¶ 31. Because this issue was not briefed, the Court assumes, without deciding, that termination for lying on a workers' compensation claim is sufficient to meet Defendant's *McDonald Douglas* burden. As such, the burden shifts back to Plaintiff to show pretext. *See Caldwell*, 850 F.3d at 241.

Plaintiff argues that medical records call into question the credibility of Defendant's proffered reason for terminating Plaintiff. Doc. #16 ¶¶ 32, 37. As to the claim that Plaintiff was lying about her ability to return to work, the February 1 Status Report that stated Plaintiff could not work until February 7, 2019 was completed by a treating doctor, not Plaintiff. Doc. #15, Ex. K at 2 (see "Role of Health Care Practitioner" and section 5b). The same is true for the February 7 Status Report explaining Plaintiff's work-duty restrictions until February 17. *Id.*, Ex. L at 2. The Court finds this evidence sufficient to create a genuine issue of material fact as to whether Defendant reasonably believed Plaintiff lied about her ability to work. *See* FED. R. CIV. P. 56(a).

Defendant also claims that it terminated Plaintiff for lying about the date and manner of the incident. Doc. #15 ¶ 31. Defendant produced two documents that show a consistent incident date of February 1, 2019, while a third states that the incident occurred a day earlier on January 31, 2019. *Compare* Doc. #15, Ex. K at 2 and Ex. L at 2, with *id.*, Ex. D at 1. Both the February 1 and February 7 Status Reports state that Plaintiff was "slapped in the face, neck and arm by another employee." Doc. #15, Ex. K at 2 and Ex. L at 2. Plaintiff's EEOC inquiry and the administrative law proceedings claim the incident also involved a door. Doc. #15, Ex. D at 3 and Ex. I at 4. Plaintiff's Workers Injury Form states "an employee slap the door on my face 2 times and my neck

11

and arm [sic]." Doc. #16, Ex. C at 2. Additionally, Defendant admits that Plaintiff's upper torso was already through the doorway but disputes that another employee caused Plaintiff's injuries by hitting her twice. Doc. #7 ¶ 20. The only inconsistent details in Plaintiff's story are the difference of a single day and whether the incident involved a door. Taking all inferences in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists as to whether these minor inconsistencies resulted from Plaintiff lying or were genuine mistakes or documentation errors. *See Am. Tel.*, 590 F.2d at 102; FED. R. CIV. P. 56(a). The possibility of pretext is further supported by the "very short" time between Plaintiff informing her employer that she had disability-related work restrictions and her termination. *See Garcia* 938 F.3d at 243–44. Because there is a genuine issue of material fact as to the credibility of Defendant's proffered reason for termination, "[n]o further evidence of discriminatory animus is required" to satisfy the burden of showing pretext. *See Laxton*, 333 F.3d at 578.

Accordingly, the Court denies summary judgment as to the disability discrimination claims.

### d. Retaliation

Finally, Defendant moves for summary judgment on Plaintiff's claim that Defendant unlawfully terminated her as retaliation for filing a workers' compensation claim. Doc. #16 ¶ 38. Under the TCHRA, a "person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." TEX. LABOR CODE § 451.001. TCHRA retaliation claims proceed under the same *McDonnell Douglas* burden-shifting analysis described above. *Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 478 (Tex. App.–Houston [1st Dist.] 2017). "To establish a prima facie case of retaliation under the TCHRA, a plaintiff must show that (1) [s]he participated in a protected activity, (2) h[er] employer took an adverse employment action against h[er], and (3) a causal connection existed between h[er] protected activity and the adverse employment action." *Id.*

Here, the causal connection is the only contested element of Plaintiff's *prima facie* case. Doc. #15 ¶¶ 46–50 and Doc. #16 ¶ 41. "The causation standard for the McDonnell Douglas prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018). This can be shown through circumstantial evidence, including the employer's "knowledge of the discrimination charge, evidence that the stated reason for the adverse employment decision was false, and temporal proximity between the employee's conduct and discharge." *Datar,* 518 S.W.3d at 478 (cleaned up). The employer's "expression of a negative attitude toward the employee's injured condition" can also be evidence of a causal link. *Cont'l Coffee Prod. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996). "However, if the employer provides evidence of a legitimate reason for the adverse action, under the federal standard, the employee must prove the adverse action would not have occurred 'but for' the protected activity." *Clark*, 544 S.W.3d at 782.

It is undisputed that (1) Defendant knew that Plaintiff filed the February 1 Status Report due to the 2019 Injury, (2) Plaintiff was terminated a mere six days after doing so, and (3) Plaintiff was terminated the same day her February 7 Status Report imposed work-duty restrictions based on the 2019 Injury. Doc. #15 ¶ 12, Ex. A-1 at 5, Ex. K at 2, and Ex. L at 2 and Doc. #16 ¶ 33. This close timing satisfies the causation standard required for a *prima facie* case. *See Clark*, 544 S.W.3d at 782. As to the remaining analysis under the *McDonnell Douglas* framework, medical records and pressure for Plaintiff to return to work at facilities with aggression-prone patients despite her 2018 Injury call into question whether Defendant's proffered reason for termination is worthy of credence. *See Datar,* 518 S.W.3d at 478; *Cont'l Coffee*, 937 S.W.2d at 451; Doc. # 15, Ex. M at 6–7, Ex. K at 2, and Ex. L at 2. As such, the Court finds that Plaintiff has shown a genuine issue material of fact as to whether Defendant would have terminated her but for her filing

the February Status Reports.

Accordingly, the Court denies summary judgment as to Plaintiff's retaliation claim.

## IV.   Conclusion

For the foregoing reasons, the Court concludes that Plaintiff abandoned her Title VII claims, failed to exhaust her failure to accommodate claim, and exhausted all other claims. The Court further finds that Plaintiff has not offered evidence to create a genuine dispute of material fact as to her hostile work environment claim but has shown a genuine dispute of material fact as to her disability discrimination and retaliation claims. Accordingly, Defendant's Motions are hereby GRANTED IN PART and DENIED IN PART. The Motion to Dismiss is granted as to Plaintiff's Title VII and failure to accommodate claims and denied on all other grounds. The Motion for Summary Judgement is granted as to Plaintiff's hostile work environment claim and denied as to Plaintiff's disability discrimination and retaliation claims.

It is so ORDERED.

AUG 3 1 2021
Date

_____
The Honorable Alfred H. Bennett
United States District Judge